**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**In the matter of the Petition of THE CITY OF ALBANY,**

                **Petitioner,**

    **vs.**                                                        1:11-cv-1524
                                                                     (NAM/ATB)

**OCCUPY ALBANY, OCCUPY ALBANY LEGAL**
**GROUP, MARK MISHLER, as Legal Representative**
**of Occupy Albany, JOHN DOE, JANE DOE,**

                **Respondents.**
_____

**APPEARANCES:**                                         **OF COUNSEL:**

Rehfuss, Liguori & Associates, P.C.                Stephen J. Rehfuss, Esq.
40 British American Boulevard
Latham, New York 12110
For Petitioner

Law Office of Mark S. Mishler, P.C.               Mark S. Mishler, Esq.
750 Broadway
Albany, New York 12207
For Respondents

**Norman A. Mordue, U.S. District Judge**

## MEMORANDUM DECISION AND ORDER

### I.   INTRODUCTION

     In October 2011, members of the Occupy Albany movement began a political protest in Academy Park ("the Park") in Albany, New York. The protest evolved into an encampment; group members installed tents and began sleeping in the Park. On December 22, 2011, the City of Albany ("the City"), petitioner, filed a special proceeding in the Supreme Court for the State of New York for Albany County along with a request for a temporary restraining order and preliminary injunction to enjoin Occupy Albany, Occupy Albany Legal Group, Mark Mishler,

John Doe and Jane Doe ("Occupy Albany"), respondents, from camping, tenting or sleeping in the Park.  The state court granted the City's request and issued an order requiring respondents to vacate the Park.  On December 28, 2011, respondents removed this case to federal court pursuant to 28 U.S.C. § 1331, on the basis that the City's petition pleaded First Amendment issues.  Dkt. No. 1.  The City moves to remand the case back to the state court on the basis that its reference to the First Amendment in the petition as a potential federal defense does not provide the Court with subject matter jurisdiction.  Dkt. No. 6.  Respondents oppose this motion.

## II.     BACKGROUND[1]

### A.     Occupy Albany

According to the notice of removal, Occupy Albany is:

> part of a national protest movement against inequality in political representation; the failure of governmental bodies from the federal level to the local level to address the economic hardship millions of Americans are suffering and to seek reform of the political system in order to eliminate these injustices. An integral part of these nation-wide "Occupy" protests, including in Albany, has been the establishment of 24 hour encampments in public spaces to highlight the urgency of the crisis faced by this country and to further the goals of protected speech, protected peaceful assembly, protected petitioning of the government for redress of grievance and protected consultation for the public good.

### B.     Academy Park

According to the petition, Academy Park is located "in the center of an urban area an . . . within" a historic district in Albany, New York.  It is surrounded by a number of historic buildings including the New York State Court of Appeals and the New York State Capitol.

The petition asserts that in the interest of preserving the Academy Park area and the surrounding structures, the Albany City Code prohibits any person from making a material

---

[1] Unless otherwise noted, this section is based on the petition and its exhibits.

change to the appearance of the property without obtaining a certificate of appropriateness from the Historic Resources Commission and a building permit from the Division of Building and Codes.  ALBANY, N.Y., CODE § 42-90.  Additionally, the design and scale of any alteration must be compatible with the surrounding buildings. ALBANY, N.Y., CODE § 42-91.

The City code contains several provisions relevant to the use of the Park.  It sets the Park's hours: sunrise to 11:00 p.m. from May to October and sunrise to 10:00 p.m. from November to April.  ALBANY, N.Y., CODE § 251-5.  It prohibits the gathering of a group larger than twenty five people for an event or demonstration in a park without a permit. *Id.* at § 251-19. It also prohibits the "treading down, trampling or injuring of grass" within the park and prohibits persons from "lying upon any part of the park designated for growing grass".  *Id.* § 251-4.

### C. Academy Park Encampment

According to the petition, on October 21, 2011, without contacting the City Planning Department or applying for a permit or "certificate of appropriateness", Occupy Albany began using the Park for a political protest. Occupy Albany members installed tents, canopies, a library, port-a-johns, space heaters, open flame cooking devices, and generators and began sleeping in the Park.

On or about October 22, 2011, the City district attorney stated that he would not prosecute any person that was arrested for violating the curfew within Academy Park.

On or about October 31, 2011, representatives from the City met with respondents "to discuss health and safety concerns" and "the drafting of a memorandum of understanding" between the parties about the use of the Park.  The parties could not reach an agreement, however, and the City advised respondents that "it planned to perform a health and fire safety inspection"

3

in the Park on November 2, 2011.

On November 2, 2011, members of the Albany Fire Department, including Fire Chief Robert Forezzi, Deputy Chief of Fire and Emergency Services, Francis J. Nerney, Jr., and Jeffrey Jamison, Esq., the Director of the City Division of Buildings and Codes, inspected the Park and met with representatives of Occupy Albany.  Deputy Chief Nerney noted, inter alia, that: tents were too close together and raised the risk of "fire spread"; self standing heaters were not secured; food storage containers were open and could lead to varmints; the generator's location raised the risk of carbon monoxide poisoning; gas cans were too close to the generator; port-a-johns needed to be pumped twice per week; and walkways needed to be cleared of clothes and suitcases.  The City's inspectors informed Occupy Albany's representatives of the hazards and violations they had found in the encampment.

Subsequently, the City met with representatives of Occupy Albany to discuss the health and safety issues identified during the inspection "and to also set parameters for an agreement between the parties for use of the Park."  They did not reach a resolution and the City informed Occupy Albany representatives that there would be "a follow up inspection for compliance with fire, health and safety codes."

When Chief Forezzi and Director Jamison inspected the park again on November 14, 2011, they noted: "[a]pproximately 80 tents - concerns with proximity and fire spread"; "[g]enerator is not completely removed from brush and combustibles - must remove and secure in appropriate area"; "[f]uel for the generator and heaters must be completely removed from the site [and] fuel cans must be labeled"; "[n]eed documentation of porta-john service - strong odor"; [e]rection of large tent bring additional concerns and would require a permit per NYS code";

4

"[l]eaf piles must be removed" and "may not be used as insulation surrounding tents"; [r]eflective cones must be placed by the propane heaters to . . . warn of tripping hazards"; "[r]ope/line/wiring from light poles to tent must be removed"; "[m]ust remove wooden structure"; [m]ust remove garbage daily (varmint and rodent concerns)"; and "[t]ents should be removed from the Elk Street area of the park to provided [sic] access for residents". The inspectors notified Occupy Albany's representatives of these violations informed them "that these violations" had to "be abated immediately" because they "were life safety issues."

After the November 14, 2011 inspection: "Communications and the ability to reach an agreement stalled. The encampment grew. Additional complaints were received by the City of ongoing code violations within the Park."

The City inspected the park again on December 1, 2011. " The inspection revealed that the respondents failed to abate any of the earlier violations observed during the first two inspections . . . . [and] that the encampment grew and more violations were present." As a result, on December 2, 2011, Director Jamison issued a "Notice and Order" to "Cease and Desist". The Order stated:

> TAKE NOTICE that the tenting, encampment and/or occupation by Occupy Albany and/or specific individuals at the premises known as Academy Park located in the City of Albany, NY has been inspected by the Department of Fire, Emergency and Building Services and has been determined to be in violation of Albany City Code, the New York State Uniform Fire Prevention and Building Code.
>
> BE ADVISED an investigation was performed by the Department on November 2, 2011, November 14, 2011 and December 1, 2011. The inspection and investigations reveal the following violations:
>
> (1) Significant accumulation of garbage rubbish and trash throughout the encampment;
> (2) Open containers of food storage - attraction of rodents and varmints;
> (3) Open flames within the encampment - cooking equipment, propane grills

>  (4) Propane heaters adjacent to combustible material;
>  (5) Fuel cans improperly stored - must be removed and properly) labeled;
>  (6) Increased clothing and material within tents creating a high hazard fire load;
>  (7) Operation and location of generator near trees and brush, with extension cords leading through underbrush;
>  (8) Storage of garbage, rubbish and debris around the fire hydrant;
>  (9) Increased amounts of clothesline creating risk of choking and/or tripping
>  (10) Piles and bags of leaves surrounding tents;
>  (11) Erection of structures without a permit;
>  (12) Oil lamp next to tents and combustibles;
>  (13) Tents grouped together creating risk of fire spread
>  (14) Clothing, signs and/or ropes attached to trees within the park;
>  (15) Storage of cardboard material, pallets and signs within tents creating a high fire load.
>
>  YOU ARE HEREBY ORDERED TO IMMEDIATELY:
>
>  Cease and Desist Use of the Premises in Violation of the Albany City Code and in Violation of the New York State Uniform Fire Prevention and Building Code.
>
>  FURTHER, YOU ARE HEREBY ORDERED TO IMMEDIATELY:
>
>  Abate and remove each and every above-referenced violation.
>
>  IN THE EVENT OF YOUR FAILURE TO COMPLY with the terms of this Notice and Order and Cease and Desist, the Department of Fire and Emergency Services and the Division of Building and Codes shall commence a legal action in law and or equity against you in a court of appropriate jurisdiction.

Exh. I.

On December 2, 2011, Chief Forezzi, concerned about the risks associated with camping in Albany in the winter, including frost bite, hypothermia, and carbon monoxide poisoning, promulgated a regulation prohibiting tenting, camping, sleeping and lying down in any public park. It stated:

> The following shall not be permitted in any City-owned park or property without the express written consent of the Chief of the Department of Fire, Emergency and Building Services or the Director of the Division of Building and Codes: There shall be no camping and/or erection of tents or other structures; no lying down of [sic] the ground, or lying down on benches, sitting areas or walkways which unreasonably

interferes with the use of benches, sitting areas or walkways which unreasonably interferes with the use of such areas by others.

The aforementioned regulation shall take effect December 6, 2011.

In a letter dated December 2, 2011 to Occupy Albany demonstrators, Corporation Counsel for the City, John Reilly, Esq., wrote that he was concerned about Occupy Albany's failure to reach a consensus and apply for a permit or enter an agreement with the City. Reilly stated that the City would issue a permit, with an expiration dated of December 22, 2011, to Occupy Albany if they complied with the Cease and Desist Order and agreed to the terms of the permit.

On December 5, 2011, the City received a letter from Occupy Albany requesting a permit for an indefinite time period. The City met with Occupy Albany that day. On December 6, 2011, the City inspected the Park and found that although there was a tent storing "excess cardboard, signs and clothing that created a high fire load", "nearly all of the violations were abated". The respondents assured the City that the remaining tent issue would be remedied. Accordingly, on December 7, 2011, the City issued a permit to the respondents permitting them to continue to protest in the park but prohibiting an encampment. The permit required respondents to remove all tenting, canopies, heaters and generators from the park prior to 7:00 a.m. on December 22, 2011, when the permit expired.

At some point in December, after the inspection, respondents installed two carports. According to the verified petition, a representative from Occupy Albany admitted to Mr. Jamison, the director of buildings and codes, that these were "semi-permanent structures". The City building code, historic code, and the permit prohibit semi-permanent structures.

On December 22, 2011, the City filed a verified petition and commenced a special proceeding seeking to enjoin respondents from continuing an encampment within Academy Park.

7

According to the petition:

> 49. Respondents have failed to comply with the City ordinance and regulations. Respondents' encampment remains in Academy Park. Respondents have stated publicly and in their request for the permit that they do not intend to remove the encampment at anytime.
>
> 50. City of Albany seeks relief to protect the health, welfare and safety of all its citizens.
>
> 51. The city recognizes the First Amendment Right of Free Speech. However, this right is not absolute. Rather, restrictions may be placed on a person's right to Free Speech. Specifically, time, place and manner restrictions.
>
> 52. The City's legitimate concerns relating to persons being exposed to the winter elements and potential danger of frost bite and hypothermia have most recently been realized . . . . To wit; the Albany Fire Department responded to a call on December 18, 2011. A homeless person complained of frost bite to her feet. The person stated that she has been sleeping in a tent at Academy park since Occupy Albany began.
>
> 53. This dreadful situation should not be allowed to occur again. As winter officially starts today, severe weather is setting in and the risk is compound [sic] daily from continued exposure to the elements.
>
> 54. Respondents have stated in several meetings that they cannot control the persons who enter the Park and who sleep in tents within the Park. This is exactly the point. Any reference to winterized tents and subzero sleeping bags is without merit, as Respondents have no way of policing the Park. Indeed, without jurisdiction to police the park.
>
> 55. In the 10 months prior to respondents encampment, there was a total of seven (7) calls for police and fire. In the two (2) months that Respondents have been in the Park, there have been 30 police and fire calls. This rate would yield 150 calls over a ten month period and represent over a 2,000% increase in calls for the same property!
>
> 56. Over the past weekend, there was a report of a homeless person entering a tent of a female and making unwanted advances. The male companion of the female arrived to find the person in the tent and physically assaulted the person.
>
> 57. In light of the increased police calls, physical attacks and risk of frost bite, hypothermia and carbon monoxide poisoning, the City cannot permit the encampment to continue and is within its police power rights to limit the protest in time, place and manner to mitigate and remove these legitimate health and safety concerns.

The petition further states that through the course of the encampment, respondents have erected and moved eighty tents, canopies and other structures and have trampled and damaged the grass in the process.

On December 22, 2011, based on the City's ex parte submissions, the state court entered a temporary restraining order: enjoining Occupy Albany from continuing with the encampment; permitting the City to remove tents, sleeping bags, heaters and any other material in Academy Park; and permitting the City to discard any material gathered if unclaimed within ten days. The order directed respondents to file and serve any opposition to the City's verified petition on or before December 28, 2011.

On December 28, 2011, respondents removed this case to federal court on the basis that the petition contains First Amendment issues. Petitioner moves to remand this action to state court on the basis that a federal defense does not provide this Court with subject matter jurisdiction.

### III.  DISCUSSION

The federal removal statute allows a defendant to remove an action to the United States District Court in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A cause of action arises under federal law only when the plaintiff's 'well-pleaded complaint' raises an issue of federal law." *State of New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). "'The well-pleaded complaint rule is the basic principle marking

9

the boundaries of the federal question jurisdiction of the federal district courts.'" *Id*. (quoting *Metro. Life Ins. Co.*, 481 U.S. at 63) (additional quotation marks omitted)).

A complaint raises an issue of federal law "when 'a right or immunity created by the Constitution or laws of the United States ... [is an] essential [element] of the ... cause of action.'" *Id*. (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)). It is well-settled that "[i]t is not enough that the complaint anticipates a potential federal defense." *Id*. (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 12 (1983); *Gully*, 299 U.S. at 116; *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)). Indeed, "a case may not be removed to federal court on the basis of a federal defense, . . . even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc*., 482 U.S. at 393.

In this case, the City alleges that respondents' encampment in the Park violates state and local law by: failing comply with the City's regulations and the terms of the permit; continuing their encampment in Academy Park after the expiration of the permit; and that using the Park in a manner that poses a threat to the health, welfare, and safety of the citizens of Albany. Although the verified petition repeatedly references the First Amendment, these references are made in recognition of respondents' First Amendment rights and in an attempt to diffuse the argument the City anticipates respondents will make in opposition: that the City's regulations and actions are unreasonable time, place and manner restrictions and violate the First Amendment. Because these references to the First Amendment "only anticipate and refute" respondents' potential defenses, "they do not give rise to federal question jurisdiction." *Shinnecock Indian Nation*, 686 F.3d at 139; *see also Gully*, 299 U.S. at 113 (a complaint "will not avail as a basis of jurisdiction

in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.").

Respondents argue that the City's petition implicates significant federal issues and therefore gives rise to federal question jurisdiction. In support of their argument respondents cite a number of cases where federal district courts have assumed jurisdiction over the claims of "Occupy" movements in other cities. *See e.g.*, *Watters v. Otter*, No. 1:12-cv-001, 2012 WL 2065549 (D.Idaho Jun. 8, 2012)*; Occupy Jacksonville v, City of Jacksonville*, No. 3:11-cv-01264, 2012 WL 1339462 (M.D.Fla. Apr. 17, 2012); *Mitchell v. City of New Haven*, No. 3:12cv370, 2012 WL 1188247 (D.Conn. Apr. 9, 2012); *Occupy Columbia v. Haley*, C/A No. 3:11-cv-3253, 2011 WL 6318587 (D.S.C. Dec. 16, 2011). In each of these cases, the Occupy movements commenced the actions in federal court pursuant to 42 U.S.C. § 1983 seeking injunctions barring the cities from removing them from city properties on the basis that removal would violate their First Amendment rights. Here, the City commenced the action seeking permission to remove Occupy Albany from the Park. Thus, these cases are inapplicable.

Further, the petition contains no allegations that respondents violated federal law; it claims only that respondents' use of the Park violates state and local law. The petition's reference to the First Amendment is in anticipation of respondents' potential argument in opposition: that the First Amendment protects Occupy Albany's right to protest and that the City's regulations and actions are impermissible time, place and manner restrictions. Indeed, the question of whether respondents' occupation of Academy Park violated City regulations and threatened the health, safety, and welfare of the citizens of Albany is distinct from the question of whether the City's actions and regulations violated the First Amendment. *Cf.*, *Shinnecock Indian Nation*, 686 F.3d

11

133 (finding that "the substantial federal question exception to the well-pleaded complaint rule" did not apply because the claims the state and town asserted did "not necessarily raise a federal issue" since "[t]he question whether the Shinnecock's construction of the casino would violate state and local law is distinct from the question[] . . . whether federal law precludes the State and Town from regulating the Shinnecock's activities at Westwoods."). The City's reference to the First Amendment in its petition as a possible defense, therefore, does not implicate a significant federal issue. Accordingly, the Court lacks subject matter jurisdiction over this action and the City's motion to remand this case to state court is granted.

**IV. COSTS AND EXPENSES**

The City requests that the Court order to pay their costs and expenses associated with the removal of this action because respondents had no "reasonable basis for removal". Pursuant to 28 U.S.C. § 1447(c): "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court instructed that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141. Under the well-pleaded-complaint rule, "federal question jurisdiction exists only if [a] plaintiff's statement of his own cause of action shows that it is based on federal law." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (internal quotation marks omitted). While the Court is aware of its authority to enter an order requiring respondents to pay costs and expenses, it finds such an order unwarranted under the circumstances of this case.

12

### V.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that petitioner's motion to remand this action to state court is **GRANTED**; and it is further

**ORDERED** that petitioner's application for costs and expenses is **DENIED**; and it is further

**ORDERED** that this action is remanded back to the Supreme Court for the State of New York for Albany County; and it is further

**ORDERED** that in accordance with 28 U.S.C. § 1447(c) the Clerk of the Court shall mail a certified copy of this Memorandum Decision and Order to the clerk of the Supreme Court for the State of New York for Albany County.

**IT IS SO ORDERED.**

Date:    September 27, 2012

_____
Honorable Norman A. Mordue
U.S. District Judge

13